1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GARY W. SCHONS
   Senior Assistant Attorney General
4  KEVIN VIENNA
   Supervising Deputy Attorney General
5  ELIZABETH A. HARTWIG, State Bar No. 91991
   Deputy Attorney General
6   110 West A Street, Suite 1100
    San Diego, CA 92101
7   P.O. Box 85266
    San Diego, CA 92186-5266
8   Telephone:  (619) 645-2278
    Fax:  (619) 645-2271
9   Email:  Elizabeth.Hartwig@doj.ca.gov

10 *Attorneys for Respondent*

11

12           IN THE UNITED STATES DISTRICT COURT

13         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

14

15  **ERNEST J. BROOKS, III,**                  08cv0125 JM (BLM)

16                          *Petitioner*,        **MEMORANDUM OF POINTS &**
                                                 **AUTHORITIES IN SUPPORT**
17           *v.*                                **OF ANSWER TO PETITION FOR**
                                                 **WRIT OF HABEAS CORPUS**
18  **KEN CLARK, *Warden*,**

19                          *Respondent.*

20

21                        **INTRODUCTION**

22

23         Ernest J. Brooks managed a baseball team for boys from disadvantaged homes.  Besides

24  providing uniforms and equipment, as well as moral support, Brooks would often invite members

25  of the team to his home for "sleep-overs."  During the sleep-overs, different boys would be selected

26  to sleep in his bedroom, and in his bed where Brooks would sexually molest them.  At trial three

27  boys who were molested in 2001 testified, as did three young men who had been previously molested

28  by Brooks when they were pre-teens or teenagers.

Brooks sole conclusory contention in his petition for writ of habeas corpus is that the court violated his right to a fair trial by admitting testimony of previous, dissimilar acts of child molestation.  (Pet. at 7-14.)

Even if Brooks's conclusory claim is cognizable in federal habeas corpus, it is without merit.  Moreover, as to a cognizable claim, the state court did not rely on unreasonable findings of fact based on the record in state court; and was not objectively incorrect and unreasonable in applying controlling United States Supreme Court precedent, because the Supreme Court has not held that propensity evidence violates due process.  Thus, this Court cannot grant habeas corpus relief under 28 U.S.C. § 2254(d), and no hearing is required.  Therefore, the Petition should be dismissed with prejudice, and these proceedings terminated.

## STATEMENT OF THE CASE

In a second amended information filed on March 21, 2002, the District Attorney of San Diego County charged Ernest J. Brooks, III, with five counts (counts one through five) of lewd acts upon a child under the age of 14 years (in violation of Cal. Pen. Code, § 288, subd. (a)); and three counts (counts six through eight) of lewd acts upon a child of 14 or 15 years of age (Cal. Pen. Code, § 288, subd. (c)(1)).  As to the first five counts, the information also alleged that appellant committed an offense described in California Penal Code section 667.61, subdivision (c), against more than one victim, within the meaning of California Penal Code section 667.61, subdivisions (b), (c), and (e).  (Lodg. 1, CT 11-14.)[1]

On April 15, 2002, a jury convicted Brooks of counts 1 and 5 (§ 288, subd. (a)), and count 8 (§ 288, subd. (c)(1)).  The jury also made special findings that those counts involved offenses committed against more than one victim, within the meaning of California Penal Code, section 667.61, subdivisions (b),(c), and (e).  (Lodg. 1, CT 121-122, 445-446, 447-448 and 448.1;

---

1.  "Lodgment" or "Lodg." refers to copies of pertinent documents lodged with this Court at the time of filing the Answer to the Petition for Writ of Habeas Corpus.
"CT" refers to the clerk's transcript for the state appeal in *People v. Ernest J. Brooks,* California Appellate Case No. D040566.

Lodg. 2, 6 RT[2/] 1406-1407.)  The jury was unable to reach verdicts on the remaining counts and the court declared a mistrial as to those counts, which were later dismissed (counts two, three, four, six and seven).  (Lodg. 1, 2 CT 449; 6 RT 1408-1409, 1416(A)-1418(C).)

On July 26, 2002, the court sentenced Brooks to an aggregate term of 33 years to life in state prison.  The sentence consisted of the three year aggravated term for count 8 (§ 288, subd. (c)(1)), followed by two terms of 15 years to life, for counts 1 and 5 (§ 288, subd. (a)), to be served consecutively to each other.  (Lodg. 1, 2 CT 401-404, 454; Lodg. 2, 6 RT 1468-1469.)

On appeal, Brooks alleged, inter alia, that the trial court erred in allowing the prosecution to present evidence of prior acts of child molestation.  (Lodg. 3, Brooks's Opening Brief in the state appeal, No. D040566; Lodg. 4, Respondent's Brief; Lodg. 5, Brooks's Reply Brief.)  Brooks's conviction was affirmed in an unpublished opinion by the California Fourth District Court of Appeal, Division One, filed on December 3, 2003.  (Lodg. 6, 2003 Cal. App. Unpub. LEXIS 11303, App. Court No. D040566.)

Brooks's petition for review to the California Supreme Court was denied on February 18, 2004, without citation or opinion.  (Lodgs. 7, 8.)  The sole contention in the petition was that the trial court erred in admitting prior acts of child molestation as propensity evidence, under California Evidence Code section 1108.  (Lodg. 6 at 2, 20-21.)

Brooks filed his first petition for habeas corpus relief in the San Diego Superior Court after his notice of appeal and before the appeal was final.  The first petition, No. HC 17276, was denied on February 10, 2003.  He filed his second petition in the Superior Court, on April 4, 2004.  The second petition was denied in an opinion filed on June 4, 2004.  (See Lodg. 9 [copies of the 2003 and 2004 Superior Court petitions are included in Exhibit A to Brooks's petition, at pages E1 and E19].)

Brooks then filed an appeal of the denial of the petition in Superior Court in the California Fourth District Court of Appeal, Division One, No. D046561, on June 3, 2005.  (Lodg. 9.)  Brooks raised a variety of issues, but not the evidentiary claim presently before this Court.  Treating the

///

---

2.  "RT" refers to the reporters' transcripts for the state appeal, No. D040566.

"appeal" as an original petition for habeas corpus relief, the appellate court denied the petition in a reasoned opinion filed on July 15, 2005. (Lodg. 10.)

On May 8, 2006, Brooks filed a Petition for Writ of Habeas Corpus in the California Supreme Court, No. S143190. (Lodg. 11.) In it, he raised one claim which alleged a search and seizure of his home violated the Fourth Amendment rights of DEAP, a California Corporation, and the illegally seized evidence was improperly introduced at his trial. The petition was denied on January 17, 2007, in an order citing *In re Dixon*, 41 Cal. 2d 756, 264 P.2d 513 (1953). (Lodg. 12.)

Brooks filed his Petition for Writ of Habeas Corpus in this Court on January 22, 2008, and this Court ordered Respondent to file an Answer to the Petition.[3/]

## STATEMENT OF FACTS [4/]

Ernest J. Brooks, III, was actively involved in youth programs for many years. During 2001, this involvement took the form of serving as a Little League coach and operating a raffle business in which Brooks would transport young boys to shopping malls and direct them to sell raffle tickets for an anti-drug program. (Lodg. 2, 2 RT 223-233, 239-241, 311-315.) Brooks would give a portion of the ticket proceeds to each of the boys, many of whom came from single-parent homes. (Lodg. 2, 1 RT 99-114, 2 RT 238-239.) After the boys sold the raffle tickets, Brooks would bring the boys to stay at his house for "sleep-overs," where the boys would watch television, swim, and play video games. (Lodg. 2, 1 RT 110-114, 2 RT 235, 243, 387-391.) During the sleep-overs,

---

3. Under 28 U.S.C. § 2244(d)(1), Brooks had one year from May 19, 2005, to file his federal habeas corpus petition. Thus when he filed the petition on January 22, 2008, the petition was untimely unless he could toll the statute. The statute was not tolled between the denial of the second Superior Court petition on June 4, 2004, and the filing of the "appeal" in the Court of Appeal on June 3, 2005, almost one year later. Brooks then waited another six months before filing his federal petition in January 2008, thus his peition in fedeal court was barred by the statute of limitations. *Evans v. Chavez*, 546 U.S. 189, 191, 200-01, 126 S. Ct. 846, 163 L. Ed. 2d 684 (2006); *Pace v. DiGuglielmo*, 544 U.S. 408, 417, 125 S. Ct. 1807, 1811, 161 L. Ed. 2d 669 (2005); *see Bonner v. Carey*, 425 F.3d 1145, 1148-1150 (9th Cir. 2005), as amended 439 F.3d 993 (9th Cir. 2006) (following *Pace*); *cf. Harris v. Carter*, 515 F.3d 1051, 1053-54, 1057 (9th Cir. 2008).

4. The statement of facts is taken primarily from the unpublished appellate court opinion. (Lodg. 6, at 2-6.) Further details are set out in respondent's brief on appeal. (Lodg. 5, at 3-16.)

1   Brooks would direct at least one boy to sleep in his bed and several boys to sleep on the floor of

2   his room.  (Lodg. 2, 1 RT 114, 2 RT 226-228, 317-318.)

3        The prosecution charged Brooks with committing lewd conduct against four boys at

4   these sleep-overs:  Antoine (age 11), Clarence (age 12), Orlando (age 15), and Marq (age 13).

5        Antoine, who was on Brooks's little league team, testified that one evening when he and

6   several boys were sleeping at Brooks's house, Brooks told him to sleep in Brooks's bed, and to take

7   off his pants before he went to sleep because the pants would make Brooks itch.  (Lodg. 2, 2 RT 236,

8   246.)  Antoine complied and slept in his boxers and a t-shirt.  Antoine said that during that night,

9   Brooks "put his hand in my pants."  While Antoine was lying on his side, Brooks reached over him

10  and touched his "private" underneath his boxers.  (Lodg. 2, 2 RT 236, 247-249.)

11       Clarence testified that during one of the sleep-overs, Brooks asked him to sleep in his bed,

12  and early in the morning when he woke up, Brooks was "pulling me closer and rubbing on my

13  stomach  [¶] . . . [¶]  up and down and back and forth."  This touching felt "not good" to Clarence.

14  When Clarence tried to get away, Brooks kept pulling him closer.  Brooks then began to rub his

15  "private part" on Clarence's spine "up and down."  Clarence thought this touching was "nasty" and

16  "disgusting."  (Lodg. 2, 2 RT 393-394.)  Brooks was moving up and down "like people having sex."

17  During this incident, Brooks was lying down sideways next to Clarence.  (Lodg. 2, 2 RT 389-394,

18  400-402.)

19       Orlando testified that Brooks touched him in an improper manner three different times.

20  In the first incident, Orlando was sleeping in Brooks's bed, lying side by side, and Brooks reached

21  over, slipped his hand under Orlando's boxers, and began feeling Orlando's penis underneath his

22  boxers.  (Lodg. 2, 1 RT 115-119.)  The next week, Orlando went back to Brooks's house for another

23  sleep-over, and Brooks told him to sleep in his bed again.  During this night, Brooks again reached

24  over and put his hand in Orlando's boxers and massaged his penis.  Brooks also pressed  his penis

25  to Orlando's buttocks.  (Lodg. 2, 2 RT 121, 129-131.)  Approximately two weeks later, Orlando

26  again slept at Brooks's house, and Brooks told him to sleep in his room.  Orlando said that he would

27  prefer to sleep on the floor, but Brooks ordered him to "just get in the bed."  Orlando was scared at

28  this point.  During the middle of the night, Brooks put his hand on Orlando's "private part" over his

1    clothes, and then pulled down Orlando's underwear and put his penis to Orlando's buttocks.

2    (Lodg. 2, 1 RT 138.)  Brooks stopped after Orlando moved away.

3            Marq testified that Brooks touched him inappropriately on three occasions when he slept

4    in Brooks's bed.  Marq said that on each occasion Brooks pulled Marq towards him and put his hands

5    on Marq's penis and "played" with it, and moved his penis "up and down on my butt."  (Lodg. 2, 2

6    RT 317-320-323, 328-331.)

7            Within weeks to months of the incidents, each minor told his mother/guardian about

8    Brooks's conduct, and then each mother/guardian reported Brooks's conduct to the police.  (Lodg. 2,

9    2 RT 251-253, 3 RT 335-336.)  A social worker separately interviewed each of the boys.  During

10   those interviews, the boys described essentially the same type of misconduct as was testified to at

11   trial although there were some inconsistencies.  Videotapes of those interviews and the boys'

12   preliminary hearing testimony were submitted into evidence at trial.  (Lodg. 2, 3 RT 578-588.)

13           The prosecution also presented the testimony of three adults who said Brooks had molested

14   them when they were minors.  (Lodg. 2, 3 RT 643-648, 3 RT 469-479, 594-602.)  This evidence was

15   admitted under California Evidence Code section 1108, which allows the admission of evidence of

16   a defendant's prior sex offenses to show the defendant's propensity to commit such offenses.  See

17   *People v. Falsetta*, 21 Cal. 4th 903, 907, 986 P.2d 182, 89 Cal. Rptr. 2d 847 (1999).

18

19       **The Defense Case**

20           Testifying on his own behalf, Brooks admitted that numerous boys slept in his bed over

21   the years, but denied that he did anything improper to them.  (Lodg. 2, 4 RT 986-1032, 1062-80,

22   1105-17.)  With respect to 11-year-old Antoine, Brook acknowledged that he did "tickle[] him on

23   his stomach," but said that "I never put my hand down his pants at all."  (Lodg. 2, 5 RT 1089.)

24           Brooks also presented the testimony of numerous boys who sold raffle tickets and

25   participated in the sleepovers, each of whom said that nothing inappropriate occurred between him

26   and Brooks.  (Lodg. 2, 4 RT 747-58, 812-16, 851-57, 883-85.)  In addition, Brooks called several

27   witnesses who offered testimony showing that the four alleged child victims frequently lied, engaged

28   in other forms of misconduct, and had previously made inconsistent statements about the dates and

1   nature of the alleged abuse.  (4 RT 758-77, 787-92, 800-04, 818, 829-34, 851-52, 865-67, 893-

2   900, 916-17, 952, 981-82.)  During closing argument, defense counsel urged the jury to find the

3   four boys not credible based on this witness testimony and various other factors, including the

4   victims' inability to remember the precise place and date of the abuse.  Counsel also identified

5   various inconsistencies with respect to each child's testimony and argued that the boys' failure to

6   immediately report the abuse showed that they were lying about the molestations.

7       The jury returned verdicts finding Brooks guilty of some of the charged crimes, but was

8   unable to reach a verdict on the remaining crimes.  (Lodg. 1, CT 121-122, 445-446, 447-448 and

9   448.1; Lodg. 2, 6 RT 1406-1407.)

10

11                          **ARGUMENT**

12                               **I.**

13                 **FEDERAL HABEAS CORPUS PRINCIPLES**

14      A federal court may grant a petition for a writ of habeas corpus "on behalf of a person

15  in custody pursuant to the judgment of a State court only on the ground that he is in custody in

16  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Estelle*

17  *v. McGuire*, 502 U.S. 62, 68-70, 112 S. Ct. 475, 480-81, 116 L. Ed. 2d 385 (1991); *Engle v. Isaac*,

18  456 U.S. 107, 119, 102 S. Ct. 1558, 1567, 71 L. Ed. 2d 783 (1982).

19      Because Brooks filed his Petition for Writ of Habeas Corpus after April 24, 1996,

20  its disposition is controlled by the Antiterrorism and Effective Death Penalty Act of 1996

21  ("AEDPA").  *Lindh v. Murphy*, 521 U.S. 320, 326-27, 117 S. Ct. 2059, 2063, 138 L. Ed. 2d 481

22  (1997); *Jeffries v. Wood*, 114 F.3d 1484 (9th Cir. 1997) (en banc), *cert. denied*, 522 U.S. 1008

23  (1997).  In enacting the AEDPA, Congress has limited the role of the federal Courts in federal

24  habeas corpus review, by requiring deference be given to the state-court decisions.  *Williams*

25  *v. Taylor*, 529 U.S. 362, 411, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); *Lockyer v. Andrade*,

26  538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003); *Woodford v. Visciotti*, 537 U.S. 19,

27  123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam); *Early v. Packer*, 537 U.S. 3, 123 S. Ct.

28  362, 365-66, 371, 154 L. Ed. 2d 263 (2002) (per curiam).

1    The highly deferential standard that controls and limits this Court's consideration of

2    Brooks's claims is set forth in 28 U.S.C. § 2254(d).  The writ may not be granted with respect to

3    any claim that was adjudicated on the merits in state court, unless the state court's adjudication

4    of the claim:

5    (1) resulted in a decision that was contrary to, or involved an unreasonable
     application of, clearly established Federal law, as determined by the Supreme
6    Court of the United States; or

7    (2) resulted in a decision that was based on an unreasonable determination
     of the facts in light of the evidence presented in the State court proceeding.
8

9    § 2254(d).

10    "[A] federal habeas court may not issue the writ simply because the court concludes in

11    its independent judgment that the relevant state-court decision applied clearly established federal

12    law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams*,

13    529 U.S. at 411.  A federal habeas court making the "unreasonable application" inquiry should

14    ask whether the state court's application of clearly established federal law was "objectively

15    unreasonable."  *Williams*, at 409; *Lockyer v. Andrade*, 538 U.S. at 75; *Woodford v. Visciotti*,

16    537 U.S. at 24-25; *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 2534, 156 L. Ed. 2d 471,

17    484 (2003); *Bell v. Cone*, 535 U.S. 685, 699, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Davis*

18    *v. Woodford*, 333 F.3d 982, 990 (9th Cir. 2003).

19    It is the habeas applicant's burden to show that the state court applied Supreme Court

20    precedent to the facts of his case in an objectively unreasonable manner.  *Williams v. Taylor*,

21    529 U.S. at 410; *Price v. Vincent*, 538 U.S. 634, 641, 123 S. Ct. 1848, 155 L. Ed. 2d 877 (2003).

22    Thus the petitioner has the burden of proving by a preponderance of the evidence that he is

23    entitled to habeas corpus relief.  *Davis v. Woodford*, 333 F.3d at 992; *Silva v. Woodford*,

24    279 F.3d 825, 835 (9th Cir. 2002).

25    Factual determinations by state courts are presumed correct, absent clear and convincing

26    evidence to the contrary.  *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041,

27    154 L. Ed. 2d 931 (2003); *Davis v. Woodford*, 333 F.3d at 991; 28 U.S.C. § 2254(d)(2).  A state

28    court decision based on a factual determination will not be overturned on factual grounds,

1  unless objectively unreasonable in light of the evidence presented at the state court proceeding.

2  *Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(e).

3        The California Supreme Court denied Brooks's petition for review and habeas petition

4  on the merits, by virtue of its "silent denials." *Hunter v. Aispuro*, 982 F.2d 344, 348 (9th Cir.

5  1992). Under the "look through" doctrine, it is presumed that the California Supreme Court did

6  not intend to change the last-reasoned decision rejecting Brooks's claims. *Ylst v. Nunnemaker*,

7  501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991); *Castillo v. McFadden*,

8  370 F.3d 882, 888 (9th Cir. 2004). If the appellate court and California Supreme Court both deny

9  habeas relief without comment, the federal court may review the proceedings in the California

10 Superior Court. *Van Linn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003). Accordingly, the state

11 court''s denial of the petition is entitled to deference and Brooks's contentions must be rejected

12 on federal collateral review.

13       The AEDPA also addresses state court factual findings in § 2254(e)(1), which provides

14 that such findings "shall be presumed to be correct" and places on the petitioner "the burden

15 of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C.

16 § 2254(e)(1). The presumption of correctness applies not only to express findings of fact, but also

17 applies equally to unarticulated findings that are necessary to the state court's conclusions of

18 mixed questions of fact and law. *See, e.g.*, *Marshall v. Lonberger*, 459 U.S. 422, 433, 103 S. Ct.

19 843, 74 L. Ed. 2d 646 (1983) (application of presumption to credibility determination which was

20 implicit in rejection of Brooks's claim).

21       Even if federal constitutional error is found, the standard for determining whether

22 habeas relief should be granted is whether the alleged error "had substantial and injurious effect

23 or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637,

24 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993), quoting *Kotteakos v. United States*, 328 U.S. 750, 776,

25 66 S. Ct. 1239, 90 L. Ed. 2d 1157 (1946); *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S. Ct.

26 1246, 1264, 113 L. Ed. 2d 302 (1991). Not all constitutional errors entitle a petitioner to relief.

27 The habeas court on collateral review must find that the error, in the whole context of the

28 particular case, had a substantial and injurious effect. *Calderon v. Coleman*, 525 U.S. 141,

1  119 S. Ct. 500, 503-04, 142 L. Ed. 2d 521 (1998).  Trial errors that do not meet this test are

2  deemed harmless.  *See Eslaminia v. White*, 136 F.3d 1234, 1237 (9th Cir. 1998); *Rice v. Wood*,

3  77 F.3d 1138, 1144 (9th Cir. 1996) (en banc).

4  If there is no federal question presented, this Court may not grant relief under 28 U.S.C.

5  § 2254(d).  *Estelle v. McGuire*, 502 U.S. 62.  Conclusory claims are also insufficient for federal

6  habeas corpus relief.  *Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995); *James v. Borg*, 24 F.3d

7  20, 26 (9th Cir. 1994); *O'Bremski v. Maass*, 915 F.2d 418, 420-23 (9th Cir. 1990).

8

9  **II.**

10 **BROOKS' CLAIM THAT THE TRIAL COURT IMPROPERLY
   ADMITTED PROPENSITY EVIDENCE OF PRIOR SEXUAL
11 MISCONDUCT, UNDER CALIFORNIA EVIDENCE CODE
   SECTION 1108, IS WITHOUT MERIT BECAUSE THE UNITED
12 STATES SUPREME COURT HAS NOT HELD THAT ADMISSION
   OF PROPENSITY EVIDENCE VIOLATES DUE PROCESS**

13

14 In his sole claim, Brooks alleges that the trial court violated his right to a fair trial,

15 by admitting propensity evidence of prior sexual molestations.  (Pet. at 7, 10-14.)  He requests

16 an evidentiary hearing on these claims.  (Pet. at 14.)

17 Brooks's claim is without merit because the United States Supreme Court has not held

18 that propensity evidence violates the federal constitutional right to due process, thus the state

19 court did not violate controlling United States Supreme Court precedent, and this Court cannot

20 grant habeas corpus relief under 28 U.S.C. § 2254(d).  No hearing is required.

21

22 **A.   The Record in the State Trial Court**

23 Prior to trial, the district attorney moved in limine to admit evidence of Brooks's prior

24 sexual misconduct, under California Evidence Code sections 1108 and 1101, subdivision (b).  The

25 proffered evidence was the testimony of three adult men (David B., Antoine H., and Cortez H.),

26 who were molested by Brooks when they were teenagers or younger.  (Lodg. 1, 1 CT 43-52.)

27 Brooks objected based on the supposedly disparate nature of the prior acts, and the passage of

28 time since these other alleged events, which supposedly occurred between 1978 and 1990.

1   Brooks contended the proposed evidence was "thoroughly prejudicial" to his defense, because the

2   current charges were "fondling," a much less serious offense than the sodomy alleged in the

3   earlier events.  (Lodg. 2, 1 RT 6.)

4        The prosecutor argued the evidence was relevant, because Brooks had been involved

5   in programs with boys for years, allowing him to invite boys to his house for "sleep-overs."

6   (Lodg. 2, 1 RT 9.)  Thus, Brooks had obtained access to children by his choice of  jobs and

7   hobbies, which facilitated a pattern of bringing boys into his house and into his bed where he

8   fondled them.  (Lodg. 2, 1 RT 9.)  The prosecutor suggested the evidence was admissible under

9   California Evidence Code section 352, with instruction that the jury must find the other acts

10  by a preponderance of evidence.  (Lodg. 2, 1 RT 9-10.)  Only then, might the jury consider

11  the effect of the other acts evidence on Brooks's intent in the current case, or his predisposition

12  to molest teenage boys.  (Lodg. 2, 1 RT 10.)  In addition, the prosecutor pointed out, that at the

13  preliminary hearing, Brooks had argued the defenses of accident, mistake, lack of sexual intent

14  and lack of  evidence that he ejaculated or otherwise expressed sexual pleasure for the boys or

15  himself.  (Lodg. 2, 1 RT 10.)  To refute such arguments, the prosecutor argued, the jury needed

16  to know about Brooks prior similar conduct, which was clearly for a sexual purpose.  That is,

17  rather than mistake or happenstance, that there was a conscious pattern of sexual molestation.

18  (Lodg. 2, 1 RT 10.)

19       Brooks denied all sexual contacts with any of the boys, including the alleged contacts

20  years previously.  (Lodg. 2, 1 RT 11.)  Brooks admitted he was associated with children, had

21  become a father figure for some of these children, and that two children did live in his house and

22  others stayed there on occasion.  (Lodg. 2, 1 RT 11-12.)  Brooks said the allegations of prior

23  misconduct would be "thoroughly tried now," although there had been no previous criminal

24  charges brought. (Lodg. 2, 1 RT 12.)

25       The court responded:

26       Well, actually, though, the law is very clear, and in a case such as this the
         ruling is very clear, and that is that the evidence is highly relevant, highly

27       probative.  It goes to the heart and soul of the issues that are to be determined
         by this jury.  It goes to intent, it goes to plan.  It goes to scheme.  And it is not

28       unusual in a circumstance such as this case to have similar conduct.  The

1    court is obligated to inform the jury of how it fits in.   [¶]   There are jury
      instructions that cover it for that very specific reason.

2

3    (Lodg. 2, 1 RT 12-13.)

4          The trial court reasoned that these three witnesses would not unduly consume the jury's

5    time.  The court noted that Brooks testified at the preliminary hearing, and apparently intended

6    to testify at trial.  It would be the obligation of the jury to determine how much weight, if any,

7    to give to incidents that supposedly occurred when Brooks was a teenager himself and these

8    witnesses were juveniles.  (Lodg. 2, 1 RT 13.)  However, the present case involved allegations

9    of fondling and rubbing of buttocks with Brooks's penis, but not sodomy.  Therefore, those

10   witnesses testifying as to prior acts were to be advised not to testify about penetration or sodomy,

11   unless directly asked on cross-examination.  (Lodg. 2, 1 RT 13-15.)

12         Brooks asked the court to "exercise [California Evidence Code, section] 352" to

13   exclude the testimony altogether.  Brooks argued if the evidence were admitted, then its

14   "dissimilarity" to the present charges could become a relevant factor.  (Lodg. 2, 1 RT 14.)  The

15   court answered that, making an issue of any "dissimilarity," was a choice for defense strategy.

16   The court would not limit the defense presentation in that regard.  (Lodg. 2, 1 RT 13-14.)

17         Pursuant to California Evidence Code section 1108, the prosecution presented the

18   testimony of three adults who said Brooks had molested them when they were minors.

19

20   **B.    The State Appellate Court Opinion**

21         On appeal, the state court rejected Brooks's contention that the admission of evidence

22   of prior acts of sexual abuse violated California law and his right to a fair trial.  The appellate

23   court discussion was thus:

24         A.  Summary of Prior Acts Evidence Admitted at Trial

25              Over defense counsel's objections, the court permitted the prosecution
           to call three adult witnesses to testify about prior sexual abuse committed by
26         Brooks.  First, 24-year-old Cortez H. testified that when he was about 9 or
           10 years old he worked for Brooks who was running a drug education
27         awareness program in which children would sell ribbons in exchange for a
           donation to the program.  Brooks would drop off the children at shopping
28         malls and pick them up several hours later, and then take the boys back to his
           house for "sleep-overs."  During direct examination, Cortez said that during

one of those sleep-overs, he was sleeping on Brooks's bedroom floor when Brooks slid "over from my side . . . put [] his hand around me," and then "touched my penis." Brooks then "just slid []" his own penis "into" Cortez. Brooks committed these same acts the next time Cortez slept over. Cortez testified that he ejaculated during each of these incidents. Cortez then stopped going to Brooks's home, but never reported the misconduct to authorities until he contacted the district attorney's office after he saw a television report of Brooks's current criminal case.

Antoine H., 26, testified that in 1989, when he was 13 years old, he went to live with Brooks because his mother abused drugs and was unable to care for him. One night, Antoine H. slept in Brooks's bed, and when he awoke his clothes were no longer on him. Brooks was "grabbing" Antoine H.'s penis and was "attempting to masturbate for [him]." Antoine H. said that Brooks then "slid up behind me and pulled out his penis and began to try to insert his penis into my behind." This same conduct occurred on numerous occasions while Antoine H. was in Brooks's custody. Brooks's "standard procedure" was that he would lie down beside Antoine H., grab him from behind, reach around his body, and then grab his private part. Although Antoine H. reported the abuse to authorities the next year (November 1990) and was interviewed by a police officer, the matter was never prosecuted. Antoine H. said he considered his six months to one year of living with Brooks to be "the year of hell" because he was pulled away from his mother and then "abused almost on a daily basis."

David B., 33, testified that when he was in the fifth grade, he admired and "looked up" to Brooks "like a big brother" because Brooks showed an interest in him and David did not have a father. David said that one weekend when he was staying with Brooks, Brooks "asked me can I have a piece of tail by grabbing the back of my underwear." While in bed, Brooks put his erect penis to David's buttocks over David's clothing and was "grinding" on him. When David said no, Brooks offered David "a couple bucks," but David continued to resist. David did not tell anyone about these incidents until he learned about Brooks's current case in the newspaper and his wife encouraged him to report the conduct "to stand up for my kids and all kids."

B. Legal Principles

Evidence Code section 1108 (section 1108[5/]) allows a court to admit evidence of a defendant's prior sex offenses to show the defendant's disposition and propensity to commit the currently charged sex offense. (*People v. Falsetta*, *supra*, 21 Cal.4th at pp. 907, 922.) Although the evidence is deemed admissible under the statute, a court must engage in a careful weighing process under Evidence Code section 352 (section 352[6/])

---

5.  California Evidence Code, section 1108(a) provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by section 1101, if the evidence is admissible is not inadmissible pursuant to section 352."

6.  Evidence Code, section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a)
(continued...)

to determine whether the probative value of the evidence is substantially outweighed by concerns of undue prejudice, confusion, or consumption of time. (*People v. Falsetta*, *supra*, at 919; *People v. Branch* (2001) 91 Cal.App.4th 274, 281-282.)  A trial court has broad discretion to weigh the relevant factors, and its decision to admit section 1108 evidence will be affirmed unless the court's ruling was "'arbitrary, whimsical, or capricious . . . .'" (*People v. Branch*, *supra*, 91 Cal.App.4th at p. 282; see *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124, 885 P.2d 1.)

C.  Analysis

On appeal, Brooks does not challenge the trial court's conclusion that the prior acts evidence was relevant as propensity evidence under section 1108.  But Brooks contends that the court abused its discretion in refusing to exclude the evidence under section 352.  Brooks maintains the evidence was unduly prejudicial because the adult witnesses testified about substantially greater sexual contact than was alleged with respect to the current victims.

We reject this argument.  Despite the difference in degree between the prior and current conduct, the prior acts evidence was strongly probative of the issues at trial.  The prior victims suffered abuse that was remarkably similar to the alleged conduct.  With respect to each victim, Brooks actively served as a role model, substitute father/big brother, and a source of money and entertainment.  Brooks took advantage of this close relationship by sleeping next to each boy and during the night, reached over the boy's side, touched the boy's penis and/or rubbed his own penis against the boy's buttocks or back.  Given these similarities between the prior and current alleged conduct, the fact that Brooks completed these sexual acts with the prior victims and not with the current victims, and/or engaged in more aggravated forms of sexual conduct, did not undermine the strong probative value of the evidence.

The willingness to commit sexual offenses against children is not common to most individuals.  Thus, evidence of a prior offense involving a victim of the same or similar age is highly probative to show a disposition to commit this crime, even if the nature of the particular acts are not identical.  (See *People v. Callahan* (1999) 74 Cal.App.4th 356, 367.)  This is particularly true here, where the defense theory focused on challenging the boys' credibility.  The fact that other boys at similar ages had suffered similar abuse under similar circumstances was highly probative in evaluating these defense claims, regardless if the prior abuse was more extensive than the current abuse.  Moreover, to the extent Brooks was contending that his touching of the current victims was innocent and merely misconstrued to be of a sexual nature, the prior acts evidence was strongly relevant to undermine this defense and show intentional conduct.

Further, although the prior acts were remote in time (12, 13, and 23 years), the "'significant similarities between the prior and the charged offenses'" make the remoteness factor less important.  (See, *People v. Branch*, *supra*, 91 Cal.App.4th at p. 285; see also *People v. Waples* (2000)

6. (...continued)

necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

79 Cal.App.4th 1389, 1394-1395.) The evidence of the prior sexual offenses reflects a strong pattern of similar abusive behavior and shows the defendant did not lead a blameless life in the interim. Under these circumstances, the gap in timing between the prior and current crimes does not undercut the relevance of the evidence. (*Ibid.*; see also *People v. Burns* (1987) 189 Cal.App.3d 734, 737-738, 234 Cal. Rptr. 547.)

Balanced against the strong probative value of the prior acts evidence, there was minimal potential for undue prejudicial effect. None of the prior crimes were substantially more inflammatory than the current offenses. Although the prior conduct included sexual acts not described by the current victims, the conduct was fundamentally the same. While sleeping with young boys, Brooks touched the victims' private areas with his hands in a sexually explicit manner. In each instance, Brooks was using his role as a father figure to obtain sexual gratification from an innocent young boy. If anything, the awkward and embarrassed testimony of the young boys describing the acts of abuse had a greater likelihood of impacting the jurors on an emotional level. Further, there was no undue consumption of time or potential for confusion. The testimony of the adult witnesses was brief and straightforward. Both the prior acts testimony, and the defense rebuttal to this testimony, took up only a small portion of the overall testimony.

Brooks relies on *People v. Harris* (1998) 60 Cal.App.4th 727 to support his argument of abuse of discretion in this case. In *Harris*, the reviewing court held the prior act of sexual misconduct, a particularly violent attack on a stranger occurring 23 years earlier, should not have been admitted because the charged offenses were of a "significantly different nature," involving a mental health nurse using the trust and dependence of his patients to obtain sexual gratification. (*Id*. at p. 738.) The *Harris* court additionally found the prior misconduct evidence was likely to confuse the jury and lead them to punish the defendant for the prior offense because the jury was presented with a redacted and misleading version of the particularly gruesome prior offense. (*Id*. at pp. 733-736, 738-739.)

These factors are not present in this case. Unlike in *Harris*, in this case both the current and prior offenses were of essentially the same nature. Further, the testimony presented was a fair recitation of the prior misconduct and was unlikely to confuse the jury as to the true nature of the allegations. Additionally, although there was no evidence that Brooks had been punished for the prior crimes, there is no basis to find the jury would find him guilty of the current offenses merely for the purpose of punishing him for the prior crimes. To the contrary, the jury verdicts show the jury carefully looked at the evidence with respect to each victim in determining Brooks's guilt. The fact that the jury was unable to reach a verdict on some charges demonstrates that the jury was not unduly influenced to believe Brooks was guilty of all charges merely because of the nature of the prior acts evidence. The jury was properly instructed that the prior crimes evidence (if found to be true by a preponderance of the evidence) may be used as evidence of defendant's propensity to commit the current crimes. On the record before us, there was no reasonable possibility that the jury would have been confused as to the proper issues that it needed to decide.

Brooks alternatively argues that even if the court did not abuse its discretion in permitting the adult witnesses to testify, the trial court committed reversible error when it permitted these witnesses to testify to

"sodomy" and "penetration" conduct that the court had previously ruled was inadmissible.

Before trial, Brooks objected to the testimony of the three adult witnesses on the basis that the "the nature and quality of the [prior] acts are so different" from the current charged acts and that one of the matters was investigated, but charges against Brooks were dropped.  The prosecutor responded that the acts were strongly probative to the disputed issues at trial, and that to the extent the prior victims asserted that Brooks committed actual penetration or sodomy against them, the court could "sanitize this [evidence]."  The court overruled Brooks's objections, noting that the evidence is "highly relevant, highly probative" and "goes to the heart and soul of the issues that are to be determined by this jury."  The court stated, however, that these witnesses should not testify to "sodomy" or "penetration" because the current offenses consisted only of "touches" or "rubbings."  At that point, defense counsel suggested that he may want to raise these issues to highlight the difference in the type of abuse suffered by the current victims.  The court agreed that defense counsel remained free to question the adult victims about the full extent of the abuse.

During his testimony about the molestations, Cortez stated that Brooks "slid[] his penis . . . into me."  Immediately following Cortez's testimony, defense counsel asked to speak with the court outside the presence of the jury.  After the court excused the jury, defense counsel said "the witness mentioned evidence of anal penetration which was supposed to be kept out of the evidence."  The prosecutor responded that she had twice instructed Cortez not to mention any penetration.  The court overruled the objection, stating Cortez's testimony did not violate its pretrial ruling because Cortez did not specifically mention penetration.

On our review of the testimony, we agree that the trial court's failure to sustain defense counsel's objection was inconsistent with its pretrial ruling that the prosecution witnesses should not testify to penetration or sodomy.  It appears the court may have misinterpreted or misheard what the witness said.  But the error in overruling the objection was not prejudicial.

Cortez's testimony about the penetration was only a small part of the overall prior acts testimony and the prosecution never mentioned this evidence again.  The fact that the jury heard testimony that Brooks completed the sexual act with Cortez, but not with the current victims, must be placed in context.  Although more egregious, it was not qualitatively different from other properly admitted testimony.  Former and current victims described a repeated pattern of sexually explicit behavior involving nudity, sexual contact, arousal, touching and attempted penetration.  In this context, the allegedly offending evidence was a difference in degree only.  On this record, it is not reasonably probable that the outcome of the trial would have been different based on the fact that Cortez briefly mentioned that Brooks completed the sexual acts with him. (See *People v. Watson* (1956) 46 Cal.2d 818, 836, 299 P.2d 243.)

With respect to the testimony of the other adult witnesses (Antoine H. and David), it is not clear that either witness did in fact testify that penetration actually occurred.  Indeed, Brooks never raised any objections with respect to these witness's purported testimony on the subject of penetration or sodomy.  Absent an objection at trial to the admission of evidence that was initially ruled inadmissible, a defendant waives the right

1
2
3
4
5

to assert error on appeal. (See *People v. Waples*, *supra*, 79 Cal.App.4th at p. 1395.) This is particularly true in this case where defense counsel indicated before trial that he was considering a strategy of allowing the jury to hear all the evidence of Brooks's prior alleged acts as a basis for arguing that the evidence was not relevant because it was not similar to the alleged conduct. In any event, as with Cortez, any error with respect to permitting evidence inconsistent with the court's pretrial ruling was not reasonably likely to have affected the outcome of the case. (See *People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

6    (Lodg. 6, at 7-15.)

7
8
9

**C.    The United States Supreme Court Has Not Held That Propensity Evidence Violates Due Process, Thus There Is No Applicable Controlling United States Supreme Court Precedent Regarding Propensity Evidence, and This Court Cannot Grant Habeas Corpus Relief Under 20 U.S.C. § 2254(d)**

10    Federal habeas corpus is available only on behalf of a person in custody in violation

11    of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v.*

12    *McGuire*, 502 U.S. at 68; *Engle v. Isaac*, 456 U.S. at 119; *O'Bremski v. Maass*, 915 F.2d at 423.

13    If no federal question is presented, federal habeas corpus relief is unavailable to retry a strictly

14    state issue. *Milton v. Wainwright*, 407 U.S. 371, 377, 92 S. Ct. 2174, 2178, 33 L. Ed. 2d 1 (1972).

15    "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley*

16    *v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1989).

17    Federal habeas corpus does not ordinarily lie to review questions about the admissibility

18    of evidence in state court, unless the error rendered the trial so fundamentally unfair as to violate

19    due process. *Estelle v. McGuire*, 502 U.S. at 67-69. Under AEDPA, the question is whether

20    the state decision is "contrary to, and involved an [objectively] unreasonable application of,

21    clearly established Federal law," as determined by the United States Supreme Court. 28 U.S.C.

22    § 2254(d)(1); *Williams v. Taylor*, 529 U.S. at 410-11.

23    The Ninth Circuit has held that Federal Rule of Evidence 414, which is analogous to

24    California's Evidence Code section 1108, does not violate the right to due process. *United States*

25    *v. LeMay*, 260 F.3d 1018, 1027 (2001). Rule 414 states that in "a criminal case in which the

26    defendant is accused of an offense of child molestation, evidence of the defendant's commission

27    of another offense or offenses of child molestation is admissible, and may be considered for

28    its bearing on any matter to which it is relevant." *Id*. at 1024. The court held in *LeMay* that

Rule 414 is not unconstitutional because it is limited in its function by Rule 403.[7]  *Id.* at 1026-1027.  Rule 403 directs judges to exclude any evidence submitted under Rule 414 that is more prejudicial than probative.  *Id.* at 1027.  The *LeMay* court reasoned that this balancing process eliminates any due  process concerns about Rule 414, stating, "[a]s long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded."  *Id.* at 1026.

The reasoning of *LeMay* applies by analogy to Brooks' case, because California Evidence Code section 1108 is analogous to Rule 414.  Evidence admissible under section 1108 is limited by section 352, just as evidence admissible under federal Rule 414 is limited by Rule 403.  Similarly, California's Section 352 permits a trial judge to exclude evidence when its probative value is substantially outweighed by its prejudicial effect, to ensure that evidence admitted under Section 1108 will not infringe on the right to a fair trial guaranteed under the Due Process Clause, just as Rule 403 did in *LeMay*.

When admitting prior sex offense evidence, the trial court must carefully weigh the evidence under section 352 to safeguard the defendant's rights.  *People v. Falsetta*, 21 Cal. 4th at 916-918.  However, the trial court's discretion under section 352 will not be disturbed unless the court acted in an arbitrary, whimsical or capricious fashion.  The trial court here conducted precisely the kind of balancing required by *Falsetta* and *LeMay*.  (Lodg. 6, at 9, citing *People v. Branch*, 91 Cal.App.4th at p. 282.)

Moreover, the United States Supreme Court has never held that the admission of evidence of prior crimes violates the right to due process.  *See Estelle v. McGuire*, 502 U.S. at 75 n.5, declining to rule on the constitutionality of propensity evidence.  Because there is no United States Supreme Court precedent holding that admission of evidence of prior sexual misconduct to show propensity violates due process, the state court's determination in this case cannot be contrary to or an unreasonable application of clearly established federal law and Brooks is not

---

7.  Federal Rules of Evidence, rule 403, provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

entitled to habeas relief pursuant to 28 U.S.C. § 2254(d)(1). *LeMay*, 260 F.3d at 1026; *Alberni v. McDaniel*, 458 F.3d 860, 863-864 (9th Cir. 2006).

Therefore, Brooks' Petition for Writ of Habeas Corpus must be dismissed with prejudice, and without a hearing.

### CONCLUSION

For the foregoing reasons, Respondent asks that the Petition for Writ of Habeas Corpus be denied with prejudice, without a hearing, and the proceedings terminated.

Dated:  June 12, 2008.

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

GARY W. SCHONS
Senior Assistant Attorney General

KEVIN VIENNA
Supervising Deputy Attorney General

    *s*/ELIZABETH A. HARTWIG

ELIZABETH A. HARTWIG
Deputy Attorney General

*Attorneys for Respondent*

EAH:sm
80248301.wpd
SD2008800668

1

**TABLE OF CONTENTS**

2

**Page**

3   INTRODUCTION                                                                1

4   STATEMENT OF THE CASE                                                       2

5   STATEMENT OF FACTS                                                          4

6          The Defense Case                                                     6

7   ARGUMENT                                                                    7

8      I.     **FEDERAL HABEAS CORPUS PRINCIPLES**                              7

9      II.    **BROOKS' CLAIM THAT THE TRIAL COURT IMPROPERLY
              ADMITTED PROPENSITY EVIDENCE OF PRIOR SEXUAL
10            MISCONDUCT, UNDER CALIFORNIA EVIDENCE CODE
              SECTION 1108, IS WITHOUT MERIT BECAUSE THE UNITED
11            STATES SUPREME COURT HAS NOT HELD THAT
              ADMISSION OF PROPENSITY EVIDENCE VIOLATES DUE
12            PROCESS**                                                         10

13            A.   The Record in the State Trial Court                          10

14            B.   The State Appellate Court Opinion                            12

15            C.   The United States Supreme Court Has Not Held That Propensity
                   Evidence Violates Due Process, Thus There Is No Applicable
16                 Controlling United States Supreme Court Precedent Regarding
                   Propensity Evidence, and This Court Cannot Grant Habeas Corpus
17                 Relief Under 20 U.S.C. § 2254(d)                             17

18   CONCLUSION                                                                 19

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

*Page*

3

**CASES**

4

*Alberni v. McDaniel*
5   458 F.3d 860 (9th Cir. 2006)    19

6   *Arizona v. Fulminante*
   499 U.S. 279
7   111 S. Ct. 1246
   113 L. Ed. 2d 302 (1991)    9
8
   *Bell v. Cone*
9   535 U.S. 685
   122 S. Ct. 1843
10   152 L. Ed. 2d 914 (2002)    8

11   *Bonner v. Carey*
   425 F.3d 1145 (9th Cir. 2005)
12   *amended* 439 F.3d 993 (9th Cir. 2006)    4

13   *Brecht v. Abrahamson*
   507 U.S. 619
14   113 S. Ct. 1710
   123 L. Ed. 2d 353 (1993)    9
15
   *Calderon v. Coleman*
16   525 U.S. 141
   119 S. Ct. 500
17   142 L. Ed. 2d 521 (1998)    9

18   *Castillo v. McFadden*
   370 F.3d 882 (9th Cir. 2004)    9
19
   *Davis v. Woodford*
20   333 F.3d 982 (9th Cir. 2003)    8

21   *Early v. Packer*
   537 U.S. 3
22   123 S. Ct. 362
   154 L. Ed. 2d 263 (2002)    7
23
   *Engle v. Isaac*
24   456 U.S. 107
   102 S. Ct. 1558
25   71 L. Ed. 2d 783 (1982)    7, 17

26   *Eslaminia v. White*
   136 F.3d 1234 (9th Cir. 1998)    10
27

28

**TABLE OF AUTHORITIES** (*continued*)

*Page*

*Estelle v. McGuire*
502 U.S. 62
112 S. Ct. 475
116 L. Ed. 2d 385 (1991)                                   7, 10, 17, 18

*Evans v. Chavez*
546 U.S. 189
126 S. Ct. 846
163 L. Ed. 2d 684 (2006)                                            4

*Harris v. Carter*
515 F.3d 1051 (9th Cir. 2008)                                       4

*Hunter v. Aispuro*
982 F.2d 344 (9th Cir. 1992)                                        9

*In re Dixon*
41 Cal. 2d 756
264 P.2d 513 (1953)                                                 4

*James v. Borg*
24 F.3d 20 (9th Cir. 1994)                                         10

*Jeffries v. Wood*
114 F.3d 1484 (9th Cir. 1997)
*cert. denied*, 522 U.S. 1008 (1997)                                7

*Jones v. Gomez*
66 F.3d 199 (9th Cir. 1995)                                        10

*Kotteakos v. United States*
328 U.S. 750
66 S. Ct. 1239
90 L. Ed. 2d 1157 (1946)                                            9

*Lindh v. Murphy*
521 U.S. 320
117 S. Ct. 2059
138 L. Ed. 2d 481 (1997)                                            7

*Lockyer v. Andrade*
538 U.S. 63
123 S. Ct. 1166
155 L. Ed. 2d 144 (2003)                                         7, 8

*Marshall v. Lonberger*
459 U.S. 422
103 S. Ct. 843
74 L. Ed. 2d 646 (1983)                                             9

**TABLE OF AUTHORITIES**  (*continued*)

*Page*

*Miller-El v. Cockrell*
537 U.S. 322
123 S. Ct. 1029
154 L. Ed. 2d 931 (2003) ............................................................... 8, 9

*Milton v. Wainwright*
407 U.S. 371
92 S. Ct. 2174
33 L. Ed. 2d 1 (1972) ....................................................................... 17

*O'Bremski v. Maass*
915 F.2d 418 (9th Cir. 1990) ...................................................... 10, 17

*Pace v. DiGuglielmo*
544 U.S. 408
125 S. Ct. 1807
161 L. Ed. 2d 669 (2005) .................................................................. 4

*People v. Falsetta*
21 Cal. 4th 903
986 P.2d 182
89 Cal. Rptr. 2d 847 (1999) ........................................................ 6, 18

*Price v. Vincent*
538 U.S. 634
123 S. Ct. 1848
155 L. Ed. 2d 877 (2003) .................................................................. 8

*Pulley v. Harris*
465 U.S. 37
104 S. Ct. 871
79 L. Ed. 2d 29 (1989) ................................................................... 17

*Rice v. Wood*
77 F.3d 1138 (9th Cir. 1996) ........................................................... 10

*Silva v. Woodford*
279 F.3d 825 (9th Cir. 2002) ............................................................. 8

*United States v. LeMay*
260 F.3d 1018 (2001) ................................................................. 17, 19

*Van Linn v. Farmon*
347 F.3d 735 (9th Cir. 2003) ............................................................. 9

*Wiggins v. Smith*
539 U.S. 510
123 S. Ct. 2527
156 L. Ed. 2d 471 (2003) .................................................................. 8

**TABLE OF AUTHORITIES**  (*continued*)

*Page*

*Williams v. Taylor*
529 U.S. 362
120 S. Ct. 1495
146 L. Ed. 2d 389 (2000)                                              7, 8, 17

*Woodford v. Visciotti*
537 U.S. 19
123 S. Ct. 357
154 L. Ed. 2d 279 (2002)                                              7, 8

*Ylst v. Nunnemaker*
501 U.S. 797
111 S. Ct. 2590
115 L. Ed. 2d 706 (1991)                                              9


**STATUTES**

28 U.S.C. § 2244                                                      4

28 U.S.C. § 2254                                              2, 7-10, 17, 19

Antiterrorism and Effective Death Penalty Act ("AEDPA")
        Pub. L. No. 104-132, 110 Stat. 1214 (1996)                   7, 9, 17

California Evidence Code
        § 352                                                        11, 18
        § 1101                                                       10
        § 1108                                               3, 6, 10, 12, 17, 18

California Penal Code
        § 288                                                        2, 3
        § 667.61                                                     2


**COURT RULES**

Federal Rules of Evidence
        Rule 403                                                     18
        Rule 414                                                     17, 18