1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  ERNEST J. BROOKS,              )  Case No. 08cv125-JM (BLM)
                                   )
12          Petitioner,            )  **REPORT AND RECOMMENDATION**
    v.                             )  **DENYING PETITION FOR HABEAS**
13                                 )  **CORPUS, AND ORDER DENYING**
    KEN CLARK, Warden,             )  **MOTIONS FOR EVIDENTIARY**
14                                 )  **HEARING AND APPOINTMENT OF**
            Respondent.            )  **COUNSEL**
15  _____)

16        This  Report  and  Recommendation  is  submitted  to  United  States

17  District Judge Jeffrey Miller pursuant to 28 U.S.C. § 636(b) and Local

18  Civil Rules 72.1(d) and HC.2 of the United States District Court for the

19  Southern District of California.

20        On January 22, 2008, Petitioner, a state prisoner appearing *pro se*,

21  filed  the  petition  for  writ  of  habeas  corpus  currently  before  this

22  Court.  Doc. No. 1 ("Pet.").  Petitioner challenges the validity of the

23  sexual  molestation  convictions  for  which  he  is  incarcerated,  arguing

24  that  the  state  trial  court  improperly  admitted  evidence  of  prior,

25  similar acts.  Pet. at 6-23.  In June 2008, Respondent Ken Clark, warden

26  of  the  facility  in  which  Petitioner  is  held,  filed  an  answer  and

27  accompanying memorandum of points and authorities, requesting that the

28

petition be denied.[1]   Doc. Nos. 9 ("Answer") & 9-2 ("Resp. Mem."). Petitioner filed a traverse in August 2008 (Doc. No. 14, "Traverse"), accompanied by a memorandum of points and authorities (Doc. No. 14-2, "Traverse Mem.").   In both the petition and traverse, Petitioner requests an evidentiary hearing and the appointment of counsel.  Pet. at 8; Pet. Mem. at 2, 4, 10.  This Court has carefully considered the above documents, as well as the record as a whole.  Based thereon, and for the reasons set forth below, this Court **RECOMMENDS** that Petitioner's petition for writ of habeas corpus be **DENIED**.  Petitioner's requests for an evidentiary hearing and appointment of counsel are **DENIED**.

### FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was actively involved in his community's youth program and, in 2001, coached little league baseball and participated in a program where he helped teen and pre-teen boys sell raffle tickets to fund anti-drug programs.  Lodg. 6 at 2 (opinion of California Court of Appeal).  After these activities, Petitioner frequently would invite the children over for "sleepovers," at which he would have boys sleep in his bed and sexually molest them.  Id. at 2-5.

On March 12, 2002, the San Diego District Attorney's Office charged Petitioner with eight counts of committing lewd acts upon four children

---

[1]Petitioner also named the California Attorney General, Edmund G. Brown, as a respondent.  Rule 2 of the Rules following § 2254 provides that the state officer having custody of the petitioner shall be named as respondent.  Rule 2(a), 28 U.S.C. foll. § 2254.  The structure of the California penal system places prisoners in the custody of both the Director of Corrections and the warden of the California prison where the petitioner is incarcerated.  See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 895 (9th Cir. 1996).  Thus, Ken Clark, the warden of the prison where Petitioner currently is incarcerated, is a proper respondent, whereas Brown, the Attorney General of the State of California, is not.  Unfortunately, the attorneys for Respondents neither moved to dismiss Respondent Brown as an improper party, nor filed an answer on his behalf.  See Answer at 1.  This Court therefore refers only to Respondent Clark throughout this Report and Recommendation.  Because the Attorney General is an improper respondent, however, this Court **RECOMMENDS** that the allegations against him be **DISMISSED** and that he be terminated as a respondent in this case.

between May and September of 2001, in violation of Cal. Pen. Code § 288. CT at 11-14.[2]  Before trial, the prosecutor moved to permit three adults to testify that Petitioner had used his position as a youth leader in the 1980's and 1990's to bring two of them, who were boys at the time, to his house and molest them during similar, frequent "sleepovers."  RT at 5-15.  The prosecutor also sought to introduce testimony from a third witness, who was a ward of the Court in Petitioner's custody, that Petitioner frequently molested him.  Id. at 5-15, 597.  The prosecutor argued that the three witnesses' testimony was relevant to show a pattern of behavior by Petitioner and an awareness of wrongdoing, and was therefore significantly more probative than prejudicial under Cal. Evid. § 352.  RT at 7-10.  The defense argued that the proposed testimony was highly prejudicial, because the prior acts alleged sodomy and masturbation, while the current charges alleged "at most fondling." Id. at 6.

Holding that the proposed testimony was "highly relevant, highly probative," the trial court agreed to allow the testimony under Cal. Evid. § 1108, which permits evidence of prior sexual acts.  RT at 12-13. However, because the instant charges did not allege penetration of the victims, and were thus of a lesser degree than those acts to which the three witnesses might testify, the court prohibited the prosecutor from making "any reference to sodomy."  Id. at 13.  Nonetheless, one of the adult witnesses testified that petitioner had sodomized him.  RT at 473, 475.

On April 15, 2002, the jury convicted Petitioner of two counts of committing lewd acts on children under fourteen years old, in violation

---

[2]Lodgments 1 & 2 comprise the Clerk's Transcript and Reporter's Transcript, respectively, of Petitioner's trial.  Hereafter, the Court cites these as "CT" and "RT."

of Cal. Pen. Code § 288(a), and one count of committing lewd acts on a child of fifteen years, in violation of Cal. Pen. Code § 288(c)(1), and made a special finding that the offenses were committed against more than one victim, in violation of Cal. Pen. Code § 667.61(b)(c)(e).  CT at 121-123.  The court sentenced Petitioner to an aggregate term of 33 years to life and then dismissed the remaining counts on which the jury could not agree.  Id. at 401-403, 449, 454; RT at 1408-1409, 1416(A)-1418(C).  The California Court of Appeal denied Petitioner's direct appeal in December 2003 (Lodg. 6), and the California Supreme Court denied the petition for review in February 2004 (Lodg. 8).

Petitioner filed his first valid[3] petition for writ of habeas corpus in state superior court on April 4, 2004, which the court denied on June 4, 2004.  Lodg. 9 at E-16 to E-17.[4]  On June 3, 2005, Petitioner filed a habeas petition in the California court of appeal, which, in a brief but reasoned opinion, that court denied on July 15, 2005.  Lodg. 10.  On May 8, 2006, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  Lodg. 11.  The supreme court summarily denied the petition on January 17, 2007, with a citation to In re Dixon, 41 Cal. 2d 756 (1953).  Lodg. 12.  Petitioner filed the instant petition for writ of habeas corpus on January 22, 2008.  Pet.

///

---

[3]Petitioner initially filed a petition for habeas corpus in state superior court during the pendency of his direct appeal.  Lodg. 9 at E23-24.  Because the direct appeal was not yet final, the superior court denied the petition without prejudice for lack of jurisdiction.  Id.

[4]It appears that Petitioner omitted from the record in this case portions of his second superior court petition and the court's denial, both of which are part of the record Petitioner attached to his habeas petition in the California Court of Appeal.  Lodg. 9.  The superior court petition and denial begin at the section labeled E-1, and are numbered consecutively until E-6, which is in the middle of the petition.  Id.  The next page is numbered E-16, and is the second-to-last page of the superior court's denial.  Id.  Despite this gap, the Court finds the record to be complete for the purpose of this order.

## DISCUSSION

Petitioner argues that the San Diego Superior Court violated California law and his right to a fair trial when it admitted testimony concerning Petitioner's prior acts of sexual molestation.   Pet.; Traverse.   Therefore, Petitioner contends, the Court should grant the petition for writ of habeas corpus.   Id.   Petitioner also requests an evidentiary hearing and appointment of counsel.   Id.   Respondent argues that Petitioner's claim does not sufficiently implicate questions of federal law, such that the Court has jurisdiction to adjudicate the petition.   Resp. Mem. at 17-19.   Respondent also argues that the petition is time-barred by the Anti-Terrorism and Effective Death Penalty Act's (28 U.S.C. § 2244(d), "AEDPA") statute of limitations (id. at 4 n.3), which Petitioner does not contest.   Respondent does not address the request for an evidentiary hearing other than to say that it should be denied (id. at 10, 19), and does not address Petitioner's request for appointment of counsel.

## A.   The AEDPA Statute of Limitations

Respondent argues that Petitioner's petition is time-barred under the one-year AEDPA statute of limitations.   Resp. Mem. at 4 n.3.[5] Timeliness under the statute of limitations is a "threshold issue" that must be determined before consideration of a petition's merits.   White v. Klitzkie, 281 F.3d 920, 921-22 (9th Cir. 2002).   Untimely petitions are barred from federal review and must be dismissed.   28 U.S.C. § 2244(d).

---

[5]This Court specifically instructed Respondent to address all "grounds upon which Respondent contends dismissal without reaching the merits of Petitioner's claims" (i.e., a statute of limitations defense) in a motion to dismiss, not an answer.   Doc. No. 8.   Although Respondent failed to heed this Court's instructions, the Court nonetheless addresses the statute of limitations.   See Bryan v. Arizona Atty. Gen., 499 F.3d 1056, 1060 (9th Cir. 2007) (in habeas context, court may consider AEDPA statute of limitations defense raised in respondent's answer).

AEDPA imposes a one-year statute of limitations on petitions for writ of habeas corpus filed by state prisoners.  28 U.S.C. § 2244(d). Section 2244(d)'s one-year limitations period applies to all habeas petitions filed by persons in "custody pursuant to the judgment of a State court."  Id. § 2244(d)(1).  The one-year limitations period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. § 2244(d)(1)(A)-(D).

Here, Petitioner challenges his trial and conviction, and the statute of limitations thus began to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  Id. § 2241(d)(1)(A). The California Supreme Court denied Petitioner's petition for review of his direct appeal on February 18, 2004.  Lodg. 8.  The statute of limitations thus began ninety days later on May 18, 2004, after the time expired during which Petitioner could have filed for *certiorari* in the United States Supreme Court.  Bowen v. Roe, 188 F.3d 1157, 1159-60 (9th Cir. 1999) (confirming ninety-day rule).  Accordingly, the AEDPA limitations period expired one year later, on May 18, 2005.  28 U.S.C. § 2244(d).  Because Petitioner did not file his federal habeas petition

1  until January 22, 2008, it is untimely absent tolling.

2      1.  <u>Statutory Tolling</u>

3      AEDPA tolls its one-year limitations period for the "time during
4  which a properly filed application for State post-conviction or other
5  collateral review . . . is pending." 28 U.S.C. § 2244(d)(2); <u>Nino v.</u>
6  <u>Galaza</u>, 183 F.3d 1003, 1006 (9th Cir. 1999). The statute of limitations
7  is not tolled, however, "from the time a final decision is issued on
8  direct state appeal [to] the time the first state collateral challenge
9  is filed." <u>Nino</u>, 183 F.3d at 1006. Similarly, the limitations period
10 is not tolled after state post-conviction proceedings are final and
11 before federal habeas proceedings are initiated. <u>See</u> 28 U.S.C.
12 § 2244(d)(2).

13     Here, Petitioner filed his first valid state habeas petition in
14 superior court on April 4, 2004 (Lodg. 9 at E-2), prior to the
15 commencement of the AEDPA limitations period so no time expired.
16 However, Petitioner waited 386 days after the California Supreme Court
17 denied his habeas petition on January 1, 2007 (Lodg. 12) to file his
18 federal habeas petition on January 22, 2008 (Pet.). Accordingly, under
19 even this basic analysis, the one-year AEDPA statute of limitations bars
20 Petitioner's claims. 28 U.S.C. § 2244(d)(2); <u>Phelps v. Alameda</u>, 366
21 F.3d 722, 724 n.1 (9th Cir. 2004) (no tolling between time California
22 Supreme Court denies habeas petition and time petition is filed in
23 federal court).

24     Petitioner engaged in additional, unwarranted delay in presenting
25 his habeas claims by waiting lengthy periods of time between his state
26 habeas filings. Although the superior court denied Petitioner's habeas
27 petition on June 4, 2004 (Lodg.9 at E-17), Petitioner did not file a
28 petition in the court of appeal until June 3, 2005, 364 days later. The

1   court of appeal denied Petitioner's petition on July 15, 2005 (Lodg. 9),

2   and 297 days later, on May 8, 2006, Petitioner filed a petition for

3   review in the California Supreme Court (Lodg. 11).

4          In Carey v. Saffold, 536 U.S. 214 (2002), the Supreme Court

5   determined that the time an application for state post-conviction review

6   is "pending" includes the interval between the lower state court's

7   adverse decision and the prisoner's filing of a notice of appeal in the

8   higher state court, provided that the filing of that notice is timely

9   under state law. See Carey, 536 U.S. at 222-23. Under California's

10  system of collateral review, a request for review[6] is considered timely

11  if it is filed within a "reasonable time." Id. at 222. The Carey Court

12  explained that where a state's law, like California's, fails to clarify

13  what constitutes a "reasonable time," federal courts must examine the

14  reasonableness of any delay in filing for successive state collateral

15  review on a case by case basis. Id. at 222, 226-27.

16         The Supreme Court revisited this "reasonable time" problem in Evans

17  v. Chavis, 546 U.S. 189 (2006). The Court affirmed the Carey reasoning

18  and then provided guidance on how to conduct the required analysis.

19  Specifically, the Court instructed that, until California courts provide

20  otherwise, federal courts reviewing habeas petitions must assume that

21  California's timeliness law does not differ significantly from those

22  states with determinate appeal periods. Id. at 199-200. The Court

23  underlined that most states provide determinate appeal periods of thirty

24  to sixty days. Id. at 201 (repeating this assertion from Carey). From

25  this, the Court held that the Evans petitioner's unjustified and

26  unexplained six-month delay in filing was more than the California

27  ────────────

28         [6]  Under California's collateral review system, an original habeas petition
    challenging a lower court's adverse decision is the equivalent of a notice of appeal.
    See Carey, 536 U.S. at 221.

08cv125-JM (BLM)

1  courts would consider reasonable.  Id.  As such, the Court concluded

2  that an unexplained delay of six months is presumptively unreasonable.

3  Id. (emphasizing that it could not "see how an unexplained delay of this

4  magnitude could fall within the scope of the federal statutory word

5  'pending' as interpreted in [Carey]").

6       Here, the periods between petitioner's state court filings (364

7  days and 297 days) significantly exceed the six-month threshold of

8  presumptive unreasonableness.  Petitioner does not attempt to justify or

9  explain these lengthy and excessive delays.  Pet.; Traverse; Traverse

10  Mem.  Because the delays are presumptively unreasonable and Petitioner

11  has not provide justification for them, Petitioner is not entitled to

12  statutory tolling for the delays between state court habeas filings

13  which exceed 180 days.  Accordingly, 301 days (184 days between superior

14  court and appellate court filings plus 117 days between appellate court

15  and California Supreme Court filings) of the 365-day limitations period

16  were expended during Petitioner's leisurely progression through the

17  state court habeas system.  That delay, coupled with Petitioner's delay

18  after the California Supreme Court's denial of his petition,

19  significantly exceeds the AEDPA statute of limitations and renders the

20  petition time-barred.  28 U.S.C. § 2244(d)(2).  Thus, unless Petitioner

21  establishes an entitlement to equitable tolling, the instant petition is

22  untimely.

23       2.  Equitable Tolling

24       In the Ninth Circuit, the AEDPA's one-year statute of limitations

25  is subject to equitable tolling.[7]  See Roy v. Lampert, 465 F.3d 964, 970

26

27       [7]  The Supreme Court has "never squarely addressed the question whether equitable
28  tolling is applicable to AEDPA's statute of limitations."  Pace, 544 U.S. at 418 n.8
   (assuming without deciding that equitable tolling applies to the AEDPA's limitations
   period).

(9th Cir. 2006).   While equitable tolling is "unavailable in most cases," Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999), it is appropriate where a habeas petitioner demonstrates two specific elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace, 544 U.S. at 418.   "[T]he threshold necessary to trigger equitable tolling [under the AEDPA] is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (citation omitted).   The petitioner bears the burden of establishing an entitlement to equitable tolling.  Id. at 1065.  Petitioners face such a high bar in order to effectuate the "AEDPA's statutory purpose of encouraging prompt filings in federal court in order to protect the federal system from being forced to hear stale claims."   Guillory v. Rose, 329 F.3d 1015, 1018 (9th Cir. 2003) (citing Carey, 536 U.S. at 226).

Here, Petitioner does not argue that he is entitled to equitable tolling and the Court sees no basis for such an argument.  Accordingly, Petitioner's delay is not subject to equitable tolling.  As a result, Petitioner's federal petition is barred by the AEDPA's one-year statute of limitations and this Court **RECOMMENDS** that it be **DENIED** as untimely.

B.   **Petitioner's Evidentiary Claim**

In his federal petition, Petitioner presents the sole claim that his "right to a fair trial was violated when the trial court admitted, without limitation, evidence of alleged prior acts" in violation of Cal. Evid. § 352 and the court's own pre-trial order.  Pet. at 7.  Respondent argues that Petitioner's claim does not present a federal question, and that the petition must therefore be dismissed.  Resp. Mem. at 17-19. For the following reasons, Petitioner does not present a federal claim

and, assuming *arguendo* that he does, that claim fails on the merits.

The prosecutor moved *in limine* to admit testimony of three adults whom Petitioner allegedly had molested when they were children.  RT at 4-14.  The prosecutor argued that the alleged prior acts were similar to those with which Petitioner was charged, and were thus relevant to show "patterns" of "getting access to these children by his job choices" and of having "boys this age in his house, in his bed very consistently throughout the years."  Id.  The prosecutor also pointed to similarities between the charged crimes and prior acts, stating that in both situations Petitioner "fondled [the victims'] penises and made attempts to try and sodomize them."  Id. at 9.  The prosecutor argued that in addition to demonstrating a pattern of behavior, this testimony would refute Petitioner's arguments that "the acts that happened with these current four victims could have either been accidental or these boys were mistaken or that [Petitioner] touched them without any sexual intent."  Id. at 10.  The defense argued that the adult witnesses' testimony was unduly prejudicial, particularly because the "current allegations are at most fondling.  And even some of them are less than that."  Id. at 6.  The defense also contended that the proposed testimony would be unreliable, and overly time-consuming.  Id. at 7, 11-12.

The court held that "in a case such as this the ruling is very clear, and that is that the evidence is highly relevant, highly probative ... It goes to intent.  It goes to plan.  It goes to scheme."  Id. at 12-13.  However, because the adult witnesses alleged that Petitioner had sodomized them, and because the case before the court only alleged attempted sodomy, the court warned the prosecutor "I don't want any reference to sodomy.  There is evidence in the case in chief

1  based on your offer of proof that sodomy ultimately might have been the

2  goal" but "as to those individuals that you're going to be permitted to

3  testify regarding prior acts, you should advise them, and they should

4  testify, if it is the fact, that he touched their rear ends with his

5  penis.  We're not going to talk about penetration."  Id. at 13-14.  The

6  judge further instructed the prosecutor that "you ought to be prepared

7  to tell your witnesses that if they're asked point-blank was there

8  penetration, they'll be permitted to respond.  But in your case in chief

9  it is going to be limited to touching."  Id. at 15.

10      Nonetheless, during the prosecutor's examination of one adult

11  witness, the following exchanges occurred:

12      Q:  At any time during the times that you spent the
          night with [Petitioner], did anything unusual
13          happen?

14      A:  I got molested.

15      Q:  What do you mean by that?

16      A:  He put his butt – I mean he put his penis in my
          buttocks.

17      ...

18      Q:  And what did [Petitioner] do?

19      A:  He just slide his penis, I mean, into me.  And I
20          didn't know what to do.  I just froze up.

21  Id. at 473, 475.

22      After the witness finished testifying, and outside the presence of

23  the jury, Petitioner's attorney objected to the testimony:

24      Attorney:        Your Honor, I asked to talk to you.  The
                     witness  mentioned  evidence  of  anal
25                   penetration which was supposed to be kept
                     out of the evidence.  It was a pre-trial
26                   order.  And --

27      The Court:       That's not the way I heard it, but what
                     are you –
28

        Attorney:        He said he slid his penis into his butt.

                              12

1
2
3

> The Court:        No.  That's not what he said.  He said he
>                   touched his butt with the penis.  At one
>                   point he said he put it in, but that was
>                   about as close as it got.

4 <u>Id.</u> at 481.

5       Later in the trial, another adult witness, who as a child had been

6 removed from his home and placed in Petitioner's legal custody,

7 described the time as the "year of hell," and recounted that Petitioner

8 frequently had masturbated and attempted to sodomize him.  <u>Id.</u> at 594-

9 600.[8]  Petitioner objects to this evidence as well, arguing that it was

10 unduly prejudicial.  Pet. at 12.

11       1.   <u>Federal Question</u>

12       Petitioner contends that admission of the above evidence was unduly

13 prejudicial, and therefore violated Cal. Evid. § 352.  Pet.; <u>see</u> Cal.

14 Evid. § 352 (permitting a court "in its discretion" to exclude evidence

15 whose probative value is "substantially outweighed" by *inter alia*, a

16 "substantial danger of undue prejudice").  Petitioner also contends that

17 admission of the evidence violated his "right to a fair trial" (Pet. at

18 7) and his "constitutional right to be judged solely on the

19 circumstances of the instant case" (<u>id.</u> at 13).

20       However, Petitioner does not specify the source of the allegedly

21 violated rights, whether it be state or federal law.  Although

22 Petitioner cites state cases in support of his claim that the trial

23 court improperly applied the California Evidence Code, he fails to cite

24 a single federal case, statute, or constitutional provision.  In fact,

25

26 _____

27       [8]Petitioner contends that this witness also testified that Petitioner sodomized
him.  Pet. at 12.  He does not, however, specify which testimony leads him to that
conclusion.  Although the witness stated that Petitioner "slid in behind" him (RT at
28 599), in context it appears that this just refers to Petitioner laying behind the
witness.  <u>See id.</u> at 597 (same witness' earlier testimony that Petitioner "slid up
behind" him as meaning that petitioner lay down behind him in bed).

1   the only reference to federal law in *any* of Petitioner's briefing is the

2   statement in his traverse that "[t]he Federal question now before this

3   Honorable Court is whether Petitioner received due process and/or a fair

4   trial after the trial court allowed the jury to hear testimony of anal

5   penetration, from an 1108 witness, that was previously prohibited,

6   pursuant to a [Cal. Evid.] 352 analysis." Traverse Mem. at 4. This is

7   insufficient to present a federal claim.

8       The U.S. Supreme Court has emphasized that it is "not the province

9   of a federal habeas court to reexamine state-court determinations on

10  state-law questions. In conducting habeas review, a federal court is

11  limited to deciding whether a conviction violated [federal law]."

12  Estelle v McGuire, 502 U.S. 62, 67 (1991); 28 U.S.C. § 2254(a) (federal

13  courts may only address a petitioner's legal claim that the state

14  courts' adjudication "resulted in a decision that was contrary to, or

15  involved an unreasonable application of, clearly established Federal

16  law, as determined by the Supreme Court of the United States").

17      Petitioner's claim is exclusively concerned with the state court's

18  application of Cal. Evid. §§ 352 (balancing probative value against

19  prejudice) and 1108 (admission of sexual propensity evidence). Pet.

20  The United States Supreme Court has explicitly stated that the question

21  of whether "evidence was incorrectly admitted ... pursuant to California

22  law ... is no part of a federal court's habeas review of a state

23  conviction." Estelle, 502 U.S. at 67 (citations and quotations

24  omitted); see also Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir.

25  1991) ("[w]e are not a state supreme court of errors; we do not review

26  questions of state evidence law"). Petitioner's arguments under the

27  California Evidence Code therefore fail to present a colorable federal

28  claim and the Court **RECOMMENDS** that the petition be **DENIED** on this basis

1  as well.

2      2.   <u>Federal Constitutional Violation</u>

3      Even if the Court construes the petition as arguing that admission

4  of the adult witnesses' testimony rose to the level of a federal

5  constitutional violation, the argument fails. A trial court's admission

6  of prejudicial evidence impermissibly compromises constitutional due

7  process only when "there are *no* permissible inferences the jury may draw

8  from the evidence," and even then, the "evidence must be of such quality

9  as necessarily prevents a fair trial." <u>Jammal</u>, 926 F.2d at 920

10  (citation and quotation omitted) (emphasis in original).

11      In the instant case, the evidence to which Petitioner objects was,

12  as stated by the trial court "highly relevant, highly probative." RT at

13  12-13.   The state charged Petitioner with violating Cal. Pen. Code

14  §§ 288(a) & 288(c), which proscribe acting with the "intent of arousing,

15  appealing to, or gratifying the lust, passions, or sexual desires of the

16  defendant or the child." CT at 11-14 (information). Petitioner stated

17  that he permitted boys to sleep with him, but argued that the acts for

18  which he was convicted were accidental, and that if he touched the

19  victims, he did so without sexual intent. RT at 986-1032, 1062-1080,

20  1105-1117; <u>see</u>, <u>e.g.</u>, <u>id.</u> at 1022 (Petitioner's testimony that he

21  "never molested nobody"). For example, in response to the prosecution's

22  charge that Petitioner had rubbed one victim's stomach and then reached

23  his hand into the victim's pants, Petitioner testified that while he

24  "tickled him on his stomach," he "never put [his] hand down his pants at

25  all. Period." <u>Id.</u> at 1089.

26      The adult witnesses' testimony that Petitioner previously had

27  sodomized and/or masturbated them, or attempted to do so, speaks to

28  Petitioner's intent and motives in touching the other boys or asking

them to sleep in his bed.  Because the testimony refutes Petitioner's arguments that his subsequent touching was non-sexual or accidental, it presents a "permissible inference" that the acts for which Petitioner was charged were not innocent in nature.  See Gonzalez v. Knowles, 515 F.3d 1006, 1012 (9th Cir. 2008) (when petitioner contended that he innocently touched child victim during a "wrestling type of play," introduction of evidence of prior molestation raises "permissible inference" that touching was with sexual intent); Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) ("[petitioner] can point to no Supreme Court precedent establishing that admission of propensity evidence, as here, to lend credibility to a sex victim's allegations, and thus indisputably relevant to the crimes charged, is unconstitutional").  The evidence also permits the jury to infer that contrary to Petitioner's arguments at trial, the victims of the crimes with which he was charged were not fabricating their stories.  See RT at 1316-1320 (argument that victims of charged crimes invented stories of molestation); Martinez v. People, 2008 WL 4447570, at *7 (C.D. Cal. Sept. 29, 2008) ("[T]he evidence of the prior sexual offense was probative of [sex victim's] credibility, as the evidence of the 1998 incident raised the inference that petitioner had the disposition to commit sexual offenses.").

Furthermore, even if it was improperly admitted, the challenged prior act evidence did not "so fatally infect[] the proceedings as to render them fundamentally unfair." Gonzalez, 515 F.3d at 1011 (citing Jammal, 926 F.2d 920).  The four victims of the charged crimes testified at length and in some detail to the fact that Petitioner rubbed his erect penis on them from behind and masturbated them.  See, e.g., RT at 116-119, 121-31, 179-80 320-22, 393.  Testimony from one adult witness that Petitioner had molested him during the "year of hell," (id. at 594-

600), and two statements from another witness that Petitioner had put his penis in the witness' butt (id. at 472-75, 481), is not so qualitatively different from the other four witnesses' testimony  that it "necessarily" prevented a fair trial.  As stated by the California Court of Appeal:

> None of the prior crimes were substantially more inflammatory than the current offenses.  Although the prior conduct included sexual acts not described by the current victims, the conduct was fundamentally the same.  While sleeping with young boys, [Petitioner] touched the victims' private areas with his hands in a sexually explicit manner.

Lodg. 9 at 11.

The allegedly objectionable evidence presented "permissible inferences" for the jury (Jammal, 926 F.2d at 920), and did not "so fatally infect the proceedings" as to render the trial unconstitutional (Gonzalez, 515 F.3d at 1011).  Therefore, insofar as Petitioner presents a timely federal constitutional claim, this Court **RECOMMENDS** that it be **DENIED**.

## C.  Evidentiary Hearing

Petitioner argues that he is entitled to an evidentiary hearing (Pet. at 7, 14; Traverse Mem. at 4-6), contending that the "fact-finding procedure employed by the state Court did not adequately provided a full and fair hearing."  Traverse Mem. at 5.  He does not, however, specify the nature of the facts he seeks to present or their relevance to his claim.

The purpose of an evidentiary hearing is to present disputed facts, Harris v. Pulley, 885 F.2d 1354, 1378 (9th Cir. 1988), and when there are no disputed material facts, an evidentiary hearing is not appropriate, McKnight v. Comstock, 445 F.3d 317, 317 (9th Cir. 1971). Here, Petitioner's sole claim concerns the admission of allegedly

1  prejudicial testimony during trial.  Pet.; Traverse.  All evidence
2  presented to the jury, as well as the relevant motion in limine and the
3  defense's objections to the testimony, are memorialized in the
4  Reporter's Transcript.  Lodg. 2.  There are no new relevant facts to
5  discover and Petitioner has not proffered any.  The authority Petitioner
6  presents in support of his request for an evidentiary hearing provides
7  general legal principles which do not pertain to the instant
8  circumstances.  Traverse Mem. at 4-6.  Petitioner's motion for an
9  evidentiary hearing is therefore **DENIED**.

10  **D.   Appointment of Counsel**

11      Petitioner requests that the Court appoint counsel to assist him in
12  this case.  Pet. at 7, 14  He does not, however, support his position
13  with facts or authority.

14      The Sixth Amendment right to counsel does not extend to federal
15  habeas corpus actions by state prisoners.  See McClesky v. Zant, 499
16  U.S. 467, 495 (1991); Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir.
17  1996) (noting that there currently exists no constitutional right to
18  appointment of counsel in habeas proceedings); Chaney v. Lewis, 801 F.2d
19  1191, 1196 (9th Cir. 1986).  However, courts may appoint counsel for
20  financially eligible habeas petitioners seeking relief pursuant to 28
21  U.S.C. § 2254 where "the interests of justice so require."  18 U.S.C. §
22  3006A(a)(2)(B); Chaney, 801 F.2d at 1196.  Whether or not to appoint
23  counsel is a matter left to the court's discretion, unless an
24  evidentiary hearing is necessary.  See Knaubert v. Goldsmith, 791 F.2d
25  722, 728-30 (9th Cir. 1986) (explaining that the interests of justice
26  require appointment of counsel when the court conducts an evidentiary
27  hearing on the petition).

28      A court's discretion to appoint counsel may be exercised only under

18

"exceptional circumstances."  Terrell v. Brewer, 935 F.2d 1015, 1017

(9th Cir. 1991).  "A finding of exceptional circumstances requires an

evaluation of both the 'likelihood of success on the merits and the

ability of the petitioner to articulate his claims *pro se* in light of

the complexity of the legal issues involved.'  Neither of these issues

is dispositive and both must be viewed together before reaching a

decision."  Id. (quoting Wilborn v. Escalderon, 789 F.2d 1238, 1331 (9th

Cir. 1986)).

The Court has reviewed Petitioner's filings thus far, including his

Petition for Writ of Habeas Corpus (Doc. No. 1), motion for extension of

time (Doc. No. 11), and traverse (Doc. No. 14).  Each filing belies

Petitioner's claims of an inability to understand the applicable law and

to respond to arguments presented by Respondents.  For example, in his

Petition, Petitioner provides a thorough recitation of his habeas claims

with corresponding references to state law and the record.  Doc. No. 1.

Similarly, in his traverse, Petitioner cogently summarizes and reasserts

his claims.  Traverse; Traverse Mem.

Thus, based on its review of Petitioner's filings, the Court finds

that Petitioner not only has a sufficient grasp of his individual claims

for habeas relief and the legal issues involved in those claims, but

also is able to articulate those claims adequately without assistance.

See LaMere v. Risley, 827 F.2d 622, 626 (9th Cir. 1987) (affirming

district court's denial of request for appointment of counsel where

pleadings demonstrated petitioner had "a good understanding of the

issues and the ability to present forcefully and coherently his

contentions").  Moreover, for the reasons set forth above, there is

minimal likelihood of success on the merits and an evidentiary hearing

is not required.  Accordingly, the Court finds there are no exceptional

1  circumstances warranting the appointment of counsel and the Court
2  declines to exercise its authority to do so.  Petitioner's request for
3  appointment of counsel is **DENIED**.

4                                **CONCLUSION**

5       For the reasons stated above, Petitioner's petition (1) is barred
6  by the AEDPA statute of limitations, (2) does not state a cognizable
7  federal claim, and (3) is without merit, even assuming it states a
8  federal claim.  Petitioner's arguments for an evidentiary hearing and
9  appointment of counsel are similarly without merit, and are therefore
10 **DENIED.**

11      Therefore, **IT IS HEREBY RECOMMENDED** that the Court issue an Order:
12 (1) approving and adopting this Report and Recommendation, and
13 (2) directing that judgment be entered denying the petition.

14      **IT IS ORDERED** that no later than **December 3, 2008**, any party to
15 this action may file written objections with the Court and serve a copy
16 on all parties.  The document should be captioned "Objections to Report
17 and Recommendation."

18      **IT IS FURTHER ORDERED** that any reply to the objections shall be
19 filed with the Court and served on all parties no later than **December**
20 **24, 2008**.  The parties are advised that failure to file objections
21 within the specified time may waive the right to raise those objections
22 on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455
23 (9th Cir. 1998).

24      **IT IS SO ORDERED.**

25 DATED:  November 12, 2008

26

27                      BARBARA L. MAJOR
                        United States Magistrate Judge
28

08cv125-JM (BLM)

COPY TO:

HONORABLE JEFFREY T. MILLER
U.S. DISTRICT JUDGE

ALL COUNSEL

08cv125-JM (BLM)